IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 26-cv-00163-CYC

ARISTILDE SEVENET,

      Petitioner,

v.

GEORGE VALDEZ, Acting Field Office Director of Enforcement and Removal Operations, Denver Field Office, U.S. Immigration and Customs Enforcement;[1]
MARKWAYNE MULLIN, Department of Homeland Security, in his official capacity;[2]
U.S. DEPARTMENT OF HOMELAND SECURITY;
TODD BLANCHE, Acting U.S. Attorney General, in his official capacity;[3]
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; and
JUAN BALTASAR, Warden of the Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,

      Respondents.

---

**ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

The government paroled petitioner Aristilde Sevenet into the country in 2023. Over the next two years, he lived in the United States, married a United States citizen, and attended immigration hearings. After one such hearing, the government arrested him. It is currently detaining him at the Denver Contract Detention Facility in Aurora, Colorado. It says that it can do so without a hearing because the petitioner's detention is under 8 U.S.C.

---

[1] George Valdez has become the Acting Director of the Denver Field Office for U.S. Immigration and Customs Enforcement and is automatically substituted as the defendant in this case pursuant to Fed. R. Civ. P. 25(d).
[2] Markwayne Mullin has become the Secretary of the Department of Homeland Security and is automatically substituted as the defendant in this case pursuant to Fed. R. Civ. P. 25(d).
[3] Todd Blanche has become the Acting United States Attorney General and is automatically substituted as the defendant in this case pursuant to Fed. R. Civ. P. 25(d).

§ 1225(b)(1). ECF No. 10 at 1. The petitioner disagrees and therefore petitioned for a writ of habeas corpus. ECF No. 1 (the "Petition"). As the Petition presents a fundamentally legal debate, there is no need for a hearing on it. *See* 28 U.S.C. § 2243. Because section 1225(b)(1) applies to arriving aliens, a category to which the petitioner does not belong, the Court grants the Petition in part.

## BACKGROUND

The petitioner, a citizen of Haiti, has lived in the United States since he entered in January 2023. ECF No. 1 ¶¶ 2, 3. Upon entry, he was taken into custody by Customs and Border Protection and paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5). *Id*. ¶ 21; ECF No. 10-1 ¶ 5. According to the respondents, the petitioner was then issued a Notice to Appear ("NTA") to initiate removal proceedings in immigration court, but that NTA was neither filed with the immigration court nor provided to the Court. ECF No. 10-1 ¶ 6. To the extent the petitioner had requirements following that NTA, he makes clear that he complied with them and "appeared as directed before the Immigration Court." ECF No. 1 ¶ 22.

After a year and a half of apparent inaction, Immigration and Customs Enforcement ("ICE") issued an NTA charging the petitioner with being inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(1) and scheduled a July 7, 2025 hearing before an immigration judge. ECF No. 10-1 ¶ 7. In the interim, the petitioner married a United States citizen, cementing his ties to and life in the country. ECF No. 1 ¶ 22; ECF No. 10-1 ¶ 8. The July 7, 2025 hearing, however, changed his circumstances. There, the immigration judge granted the Department of Homeland Security's ("DHS") request to dismiss the removal proceedings and, after the hearing, ICE officers arrested and detained the petitioner. ECF No. 10-1 ¶ 10. Apparently, the government terminated the petitioner's parole at some point before this, though it is unclear when. *See id.*

2

Later that month, the petitioner's wife filed a Form I-130 Petition for Alien Relative on the petitioner's behalf, seeking to classify him as an immediate relative of a U.S. citizen under the Immigration and Nationality Act. ECF No. 1 ¶ 23; ECF No. 10-1 ¶ 8. After his initial detention in Florida, the petitioner's state of residence, on August 12, 2025, DHS transferred him to a detention facility in Colorado. ECF No. 10-1 ¶¶ 11, 14. With the petitioner now in this District, DHS restarted its aborted removal proceedings by issuing yet another NTA to the petitioner on September 6, 2025, which set a hearing before an immigration judge to occur eleven days later. ECF No. 10-3 at 2. The NTA "included an additional allegation in support of the charge of inadmissibility," ECF No. 10-1 ¶ 16, though the respondents do not clarify the nature of that allegation. Whatever it was, the petitioner disputes it. ECF No. 10-4 at 3.

This new attempt at starting removal proceedings did not last long. In February 2026, the petitioner moved to terminate removal proceedings, which the immigration judge granted, reasoning that, among other things, the aforementioned I-130 petition was "likely to be approved." ECF No. 11-1 at 3. The respondents reserved their right to appeal that decision, ECF No. 12 at 3, though it is unclear whether they have since exercised that right.

The petitioner petitioned for a writ of habeas corpus on January 14, 2026. ECF No. 1. He maintains that his continued detention violates the Immigration and Nationality Act, the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act, the Equal Protection Guarantee of the Fifth Amendment, and the Suspension Clause of Article I of the Constitution. Id. ¶¶ 35–89. He seeks release or an order requiring an individualized bond hearing before an immigration judge. Id. The respondents say that detention is under 8 U.S.C. § 1225(b)(1) and therefore no hearing is required. ECF No. 10 at 1, 4–13; ECF No. 12 at 2–3.

**ANALYSIS**

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. This includes "[c]hallenges to immigration detention." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). The individual in custody bears the burden of proving that their detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941). To meet that burden, the petitioner argues that his continued detention premised on 8 U.S.C. § 1225(b)(1) violates, among other things, due process and the Immigration and Nationality Act ("INA"). ECF No. 1 ¶¶ 35–56.

In addressing this question, the Court does not write on a pristine page. The leading case in this District is *Rafibaev v. Noem*, No. 26-cv-00461-PAB, 2026 WL 607559 (D. Colo. Mar. 4, 2026). There, Judge Brimmer explained that "where petitioner has been released on parole pursuant to § 1182(d)(5)(A)" into the United States for a significant amount of time, "it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *Id*. at *2 (quotation marks omitted). "[C]ourts analyzing § 1225(b)(1)," after all, "have come to the . . . conclusion" that one already in the United States cannot be "arriving" in the United States. *Id.* at *3. *Rafibaev* therefore concluded that, section 1225 being inapplicable, the detention of a petitioner previously paroled into the country "is governed by § 1226(a)." *Id.* at *5 Other judges in this District have largely agreed with Judge Brimmer's analysis. *See Abdyrakhmanov v. Baltazar*, No. 26-cv-01875-NYW, 2026 WL 1800941, at *6 & n.3 (D. Colo. June 23, 2026); *Africano Pulido v. Baltazar*, No. 26-cv-01818-CNS, 2026 WL 1425034, at *1–2 (D. Colo. May 21, 2026); *Rabaev v. Baltazar*, No. 26-cv-00811-SBP, 2026 WL 911279, at *3 (D. Colo. Apr. 2, 2026); *Khubiev v. Baltasar*, No. 25-cv-03955-STV, 2026 WL 864237, at *6

4

(D. Colo. Mar. 30, 2026). It applies here: the petitioner lived in the United States for years before his July 2025 arrest and, as such, a provision covering arriving aliens cannot cover him.

His detention is therefore governed by 8 U.S.C. § 1226(a). "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The respondents offer no evidence of a criminal history requiring mandatory detention under 8 U.S.C. § 1226(c). As a result, the petitioner's detention is governed by Section 1226(a). Such individuals are entitled to a bond hearing. *Jennings*, 583 U.S. at 306. Accordingly, the petitioner's continued detention without one violates due process.

To be sure, not every court has followed *Rafibaev*'s rationale, and the respondents contend that 8 U.S.C. § 1182(d)(5)(A) compels a conclusion that upon termination of parole, the petitioner reverted to the status of "an applicant for admission subject to mandatory detention under § 1225(b)(1)." ECF No. 10 at 5–6 (citing *Depelian v. Baltazar*, 25-cv-03765-SKC-TPO, ECF No. 18 (D. Colo. Jan. 1, 2026)). But "*Depelian*'s analysis of the issue does not demand that the Court reach the same conclusion." *Murzi v. Noem*, No. 26-cv-00359-CNS, 2026 WL 395111, at *1 (D. Colo. Feb. 12, 2026). Section 1182(d)(5)(A) provides:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

5

8 U.S.C. § 1182(d)(5)(A). It "does *not* state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Rafibaev*, 2026 WL 607559, at *4 (quoting *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025)). The statute does indicate that a noncitizen must "be returned to the custody from which he was paroled," but "[i]t would be illogical that these noncitizens would revert back to being detained pursuant to § 1225(b)(1), which governs the inspection of noncitizens 'arriving into the United States,' . . . especially . . . given that § 1182(d)(5)(A) does not state that a noncitizen reverts back to the status he or she possessed before the grant of parole." *Id.* It also requires that "his case . . . continue to be dealt with in the same manner as that of any other applicant for admission," 8 U.S.C. § 1182(d)(5)(A), but "an 'applicant for admission' need not be 'arriving in the United States'" such that section 1225(b)(1) would mandate detention without a bond hearing. *Rafibaev*, 2026 WL 607559, at *4. Thus, "paroled petitioners who go on to live in the United States have been released on their own recognizance, and therefore [ ] § 1226, rather than § 1225, applies." *Murzi*, 2026 WL 395111, at *1. This is the view of "the majority of courts . . . across the country," *Nimaga v. Francis*, No. 26-CV-2868 (PKC), 2026 WL 1656049, at *5 (E.D.N.Y. June 8, 2026) (collecting cases), authority with which "*Depelian* did not contend," *Murzi*, 2026 WL 395111, at *2, given that much of it post-dates that decision. *Depelian* therefore does not require departure from *Rafibaev*.

Other courts have faulted *Rafibaev* for failing to grapple with the "entry fiction" doctrine. *See Flores Diaz v. Mullin*, No. 2:26-CV-00639-KWR-JHR, 2026 WL 1481585, at *7–11 (D.N.M. May 27, 2026); *see also Fuenmayor v. Mullin*, --- F. Supp. 3d ---, 2026 WL 963297, at *3–4 (D.N.M. Apr. 9, 2026). That doctrine is the idea "that 'aliens who arrive at ports of entry— even those paroled elsewhere in the country for years pending removal—are treated for due

6

process purposes as if stopped at the border.'" *Abdyrakhmanov*, 2026 WL 1800941, at \*5 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). But that doctrine does not "address the statutory question presented by Petitioner here." *Id.* Indeed, because "the entry fiction appears to be a rule for defining the *constitutional due process constraints* on Congress's treatment of certain immigrants," there are "serious doubts about using the entry fiction as a tool of statutory interpretation" or as "a rule for interpreting the INA." *Ontiveros v. Warden Corr. Ctr. of Nw. Ohio*, No. 3:26-cv-632, 2026 WL 1109422, at \*5 n.5 (N.D. Ohio Apr. 24, 2026). *Rafibaev* itself explicitly noted that it was "not determining the nature and extent of petitioner's due process rights, but rather is interpreting the statute in the context of a habeas corpus petition." 2026 WL 607559, at \*3 n.6. And to the extent the petitioner's parole expired prior to his arrest — the respondents do not say when that occurred — "other courts have persuasively explained why 'entry fiction' 'ends once a person has been living in the country after parole expires.'" *Abdyrakhmanov*, 2026 WL 1800941, at \*6 (quoting *Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 366 (W.D.N.Y. 2025)). In short, the entry fiction is no reason to reject *Rafibaev*'s analysis.

That leaves the question of whether immediate release or a bond hearing is the appropriate relief. "[B]ecause § 1226(a) 'does not require release,' but instead 'provides DHS the discretion to grant an alien release on bond,' the Court finds it more appropriate to order Respondents to provide Petitioner with a bond hearing before an immigration judge, who 'is better suited to consider whether Petitioner poses a flight risk and a danger to the community.'" *Abdyrakhmanov*, 2026 WL 1800941, at \*6 (quoting *Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at \*8 (D. Colo. Oct. 24, 2025) and *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at \*9 (D. Colo. Oct. 22, 2025)); *see Khubiev*, 2026 WL

864237, at *6 (same); *Rafibaev*, 2026 WL 607559, at *5 (same). *But see Murzi*, 2026 WL 395111, at *2 (granting immediate release). Given that section 1226(a) governs the petitioner's detention and that statute contemplates a bond hearing before an immigration judge, the Court orders that such a hearing be held within three days of this order.

Because the Court agrees with the petitioner's argument that section 1225(b)(1) does not govern his detention, the Court need not address his other arguments.

There is a final matter. The petitioner requests attorneys' fees and costs. ECF No. 1 at 19. But D.C.COLO.LCivR 54.3(a) requires that "a motion for attorney fees . . . be supported by affidavit," and no such affidavit supported the request. Further, "a motion involving a contested issue of law shall . . . be supported by a recitation of legal authority in the motion." D.C.COLO.LCivR 7.1(d). As a result, the Court denies this portion of the Petition without prejudice. If the petitioner chooses to file a motion for attorney fees, it must comply with all applicable rules and provide legal authority for the request. *See L.G. v. Choate*, 744 F. Supp. 3d 1172, 1187 (D. Colo. 2024).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Petition, ECF No. 1, is **GRANTED in part** and **DENIED without prejudice in part.**

It is further ORDERED that

(1) the respondents shall provide the petitioner with a bond hearing under 8 U.S.C. § 1226(a), with the government bearing the burden of proving that the petitioner is a flight risk by a preponderance of the evidence or a danger by clear and convincing evidence, *see Kuzmic v. Baltasar*, No. 26-cv-00577-CYC, 2026 WL 1291853, at *6 (D. Colo. May 12, 2026), within **three days** of this Order;

8

(2) the respondents are **ENJOINED** from denying bond to the petitioner on the basis that

he is detained pursuant to 8 U.S.C. § 1225(b); and

(3) the respondents shall file a status report within **seven days** of the petitioner's bond

hearing, stating whether he has been granted bond, and, if his request for bond was

denied, the reasons for that denial.

Entered and dated this 25th day of June, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge